UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER CRUMLEY, an individual, <br><br> Plaintiff, <br><br> v. <br><br> SECURITYSCORECARD, INC., a New York Corporation, <br><br> Defendants. | Case No.: 3:24-cv-02037-L-AHG <br><br> **ORDER DENYING MOTION TO COMPEL ARBITRATION** <br><br> [ECF No. 22.] |

Pending before the Court is Defendant SecurityScorecard, Inc.'s, motion to compel arbitration. (ECF No. 22.) Plaintiff Jennifer Crumley opposed (ECF No. 24), and Defendant replied (ECF No. 25). The Court decides the matter on the papers submitted without oral argument. *See* Civ. LR 7.1(d.1). For the reasons set forth below, Defendant's motion to compel arbitration is denied.

A.  **BACKGROUND**

Jennifer Crumley ("Crumley") brings this action against her former employer, SecurityScorecard, Inc. ("Defendant").[1] Crumley was the Field Sales Director, Southern California Region, for Defendant. Crumley alleges that Defendant consistently discriminated against her on the basis of her gender in favor of younger, male employees. Crumley also alleges that Defendant unlawfully terminated her to avoid paying her commission on a record-breaking deal that Crumley had procured and instead paid the commission to a younger, male employee who did not procure the deal. Crumley filed a complaint against Defendant alleging employment discrimination, wrongful termination, and other claims under California law. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

B.  **DISCUSSION**

Defendant moves to compel arbitration pursuant to the terms of Plaintiff's employment. Plaintiff opposes the motion.

1.  **Contractual Provisions**

When Plaintiff was hired, Defendant sent her an onboarding packet via DocuSign on December 18, 2019. (ECF No. 24-1 ("Crumley Decl.") ¶ 3.) The packet contained a two-page single-spaced offer letter stating that it "reflect[ed] the entire agreement regarding the terms and conditions of [her] employment." (*Id.* ¶ 3 & Ex. 1 at 7-8 ("Employment Agreement").)[2] The Employment Agreement stated that "as a condition of … employment, [she] will sign Company's standard Employee Proprietary Information and Inventions and Non-Competition Agreement" which was included in the packet. (*Id.* Ex. 1 at 9-13 ("Proprietary Information Agreement").)

---

[1] All background facts, unless otherwise noted, are taken from the first amended complaint. (ECF No. 17.)

[2] The page numbers listed are the ECF page numbers.

2

3:24-cv-02037-L-AHG

The Proprietary Information Agreement provides in relevant part,

> <u>Binding Arbitration.</u>  I agree that any dispute arising out of or related to the employment relationship between me and the Company, including breach of this Agreement or the termination of the employment relationship, and any allegations of unfair or discriminatory treatment arising under the state or federal law or otherwise, shall be resolved in accordance with the terms of the Company's Arbitration Agreement which is incorporated into this Agreement.

(*Id.* ¶ 11.)  It listed three exhibits, including the Arbitration Agreement, which were "made a part of and incorporated by reference in" the Proprietary Information Agreement.  (*Id.* ¶ 18.)

The Arbitration Agreement provides that "except as noted below, any controversy, claim or dispute arising out of or related to my employment or the termination thereof … shall be arbitrated[.]"  (Arbitration Agreement ¶ 1.)  It further states that "[t]he arbitrator shall have exclusive authority to resolve … any dispute relating to the interpretation, applicability, enforceability or formation of this arbitration agreement."  (*Id.* ¶ 1(c).)

### 2. Legal Standard

The parties agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., governs Defendant's motion to compel arbitration.  Under the FAA, a district court determines, (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).[3]

In opposing Defendant's motion, Plaintiff argues that the arbitration agreement is unconscionable under California law and therefore unenforceable.  Defendant contends that the issue whether the agreement is enforceable was delegated to the arbitrator, and

---

[3] Internal citations and quotation marks may be removed unless otherwise noted.

the Court should compel arbitration even if only to determine arbitrability. Plaintiff counters that the delegation clause itself is unconscionable, thus reserving the arbitrability issue to this Court.

"[A]rbitration is fundamentally a matter of contract." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

"[G]ateway issues of arbitrability presumptively are reserved for the court." *Momot*, 652 F.3d at 987. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Even though judicial resolution, not arbitration, is the presumptive forum for disputes about arbitrability, "parties may agree to delegate them to the arbitrator." *Momot*, 652 F.3d at 987. "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as … whether the arbitration provision is enforceable at all." *Caremark LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022).

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

/ / / / /

### 3. The Delegation Clause

As a threshold issue, the Court must first determine whether the Arbitration Agreement delegates the authority to decide issues of arbitrability to the arbitrator. A court must determine whether the underlying agreement "clearly and unmistakably" delegated the questions of arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract ... even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc.*, 586 U.S. at 65.

Plaintiff contends that there is no clear and unmistakable evidence that the parties intended to arbitrate arbitrability. The Arbitration Agreement provides that

> the arbitrator shall have exclusive authority to resolve…any dispute relating to the interpretation, applicability, or enforceability…of this arbitration agreement, including, but not limited to, any claim that all or any part of this arbitration agreement is void or voidable.

(Arbitration Agreement ¶1(c).) This provision clearly contemplates delegating the issue of arbitrability to the arbitrator. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (clear and unmistakable delegation when the arbitration agreement authorized the arbitrator to "decide issues relating to the 'enforceability, revocability, or validity of the Arbitration Provision'"); *see also Momot*, 652 F.3d at 988 (clear and unmistakable delegation when the contract authorized the arbitrator to decide "the validity or application of any of the provisions of" the arbitration clause).

### 4. Unconscionability of the Delegation Clause

When arbitrability is clearly and unmistakably delegated to the arbitrator, a court must enforce that delegation clause "in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability." *Mohamed*, 848 F.3d at 1209; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Therefore, unless the

Court finds that the delegation clause is unconscionable, as Plaintiff contends, the Court must enforce the delegation clause. *See id.*

To challenge a delegation clause as unconscionable, "the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it" as unconscionable. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023). The party resisting arbitration bears the burden of demonstrating unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246–47 (2012).

This analysis is not limited to the bare text of the clause. "A party is ... permitted under *Rent-A-Center* to challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable." *Holley-Gallegly*, 74 F.4th at 1002. The court "must be able to interpret the provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Bielski*, 87 F.4th at 1012. A court must "consider the parts of the agreement that impact[ ] the delegation provision to decide its enforceability." *Id.* at 1011. "[I]f a court cannot look through the delegation provision to the rest of the contract, a court would fail to see how delegating questions of arbitrability to an arbitrator was unconscionable." *Id.* at 1012.

To demonstrate unconscionability under California law, a plaintiff must show that the clause is both procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* If there is "substantial procedural unconscionability ..., even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." *OTO, LLC v. Kho*, 8 Cal.5th 111, 130 (2019).

/ / / / /

i.  Procedural Unconscionability

Procedural unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal.4th at 113.  A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id*.

> Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without notable surprises, and bear within them the clear danger of oppression and overreaching.  [C]ourts must be particularly attuned to this danger in the employment setting, where economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.

*Baltazar v. Forever 21, Inc*., 62 Cal.4th 1237, 1244 (2016).

Crumley received employment documents via Docusign and was directed to sign the same day.  (Crumley Decl. ¶ 4.)  Signing the Arbitration Agreement, incorporated by reference into the Proprietary Information Agreement, was a condition of her employment.  (*Id.*; Employment Agreement at 8.)  The Proprietary Information Agreement and Arbitration Agreement were on preprinted forms and were non-negotiable.  (Crumley Decl. ¶ 4.)

While Defendant argues that Plaintiff was a high-level employee who should have been able to negotiate the terms if she found them unacceptable, the manner in which Plaintiff was presented the Proprietary Information Agreement and the Arbitration Agreement as a condition of employment shows they were contracts of adhesion displaying at least some level of procedural unconscionability.  *See OTO, LLC*, 8 Cal.5th at 127.  Accordingly, Plaintiff has shown sufficient of procedural unconscionability to warrant examination of substantive fairness.

/ / / / /

ii.     Substantive Unconscionability

Substantive unconscionability focuses on the fairness of a contract's terms to ensure that contracts, "particularly contracts of adhesion," do not impose terms that are "unreasonably favorable to the more powerful party." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021) (applying Cal. law).  Plaintiff argues that unlawful fee-shifting, venue, and choice of law provisions apply to the delegation clause and are sufficient to show substantive unconscionability.

Section 1(a) in the Arbitration Agreement requires that "all claims shall be submitted to final and binding arbitration before the American Arbitration Association ("AAA") in New York City, New York.".  This venue provision applies to Arbitration Agreement as a whole, including its delegation clause.  Accordingly, Plaintiff would have to travel to New York even just to challenge the arbitrability of her claims.  Under California law, "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would … [r]equire the employee to adjudicate outside of California a claim arising in California." Cal. Lab. Code § 925(a).

Further, the Arbitration Agreement contains a fee shifting provision that states "[a]ll fees and expenses relating to any arbitration (including, without limitation, the reasonable legal fees and expenses of the prevailing party and expert witness fees) arising pursuant hereto shall be paid by the non-prevailing party."  Under California law,

> when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.

*Armendariz*, 24 Cal. 4th at 110–11; *see also Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 508 (2024); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010), *disapproved of on other grounds by Poublon v. C.H. Robinson Co.*, 846 F.3d 1251,

1265–66 (9th Cir. 2017) (applying Cal. law, arbitration contract substantively unconscionable when employees face "greater financial risk in arbitrating claims than they would face if they were to litigate those same claims in federal court").

Defendant argues that the fee-shifting clause is not relevant to the delegation clause, claiming that there is not a prevailing party in determining the arbitrability of the case. The Court is not persuaded. If the defendant "prevail[s] on arbitrability and later prevail[s] on the merits in the arbitration, the contract would allow [defendant] to seek to recover all of its reasonable attorney's fees, including those incurred in connection with determining arbitrability." *Lim*, 8 F.4th at 1003. This creates a "chilling effect" on plaintiffs. *Id*. This risk would not occur if Plaintiff were to litigate her case in court, as under California law, an employee can only be required to pay attorney's fees in significantly more limited situations. *See Ramirez*, 16 Cal. 5th at 508 ("[A]n arbitration agreement imposed as a condition of employment cannot require an employee to pay attorney fees to the employer in the arbitration of a statutory claim, unless the arbitrator finds that the action was frivolous, unreasonable, or groundless when brought, or that the employee continued to litigate after it clearly became so.").

Finally, the Arbitration Agreement itself does not include a choice of law clause; however, the Proprietary Information Agreement, which incorporates the Arbitration Agreement, states that it "shall be governed by and construed in accordance with the laws of the State of New York." (Proprietary Information Agreement ¶ 19.) Accordingly, the choice of law provision applies to the Arbitration Agreement as well, including its delegation clause.[4] (*Id*.) Under California law,

---

[4] Defendant argues, without legal citation, that consideration of broader Employment Agreement is a violation of the parol evidence rule. The parol evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1433 (1992). As the Proprietary Information

9

> An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would … [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California.

Cal. Lab. Code § 925(a). The choice of law provision would purport to apply New York state substantive law to the delegation provision and to Plaintiff's unconscionability defense. New York unconscionability law differs from California's in at least one material way. New York law "allow[s] for the enforcement of [] arbitration agreement[s] as modified by the defendants' waivers." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124 (2d Cir. 2010). However, under California law, "waiving unconscionable elements of the delegation clause does not change the analysis of whether the delegation clause, as drafted, is unconscionable." *Lim*, 8 F.4th at 1004; *see also Armendariz*, 24 Cal. 4th at 125 (A defendant's later willingness to alter the arbitration provision "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy."). Accordingly, the choice of law provision is oppressive in the context of the delegation clause.

    Defendant argues that any unlawful provisions of the agreement do not apply as the Arbitration Agreement has a "savings clause" that limits it "to the maximum extent permitted by law." (Arbitration Agreement ¶ 1.) Under Defendant's interpretation of the savings clause, Defendant could deliberately insert any manner of unlawful provision and "save" the Arbitration Agreement by later arguing the provision is qualified only to the maximum extent permitted by law. Defendant cannot rely on the savings clause to remove the unconscionable provisions from application to the delegation provision.

/ / / / /

---

Agreement, including the Arbitration Agreement incorporated therein, is one single unified contract, the parol evidence rule has no application.

Alternatively, Defendant requests to sever any unconscionable provisions.

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5. "[T]he doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme." *Armendariz*, 24 Cal.4th at 124. Multiple unconscionable provisions in one arbitration agreement "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation but as an inferior forum that works to the employer's advantage." *Id*. In order to find the delegation provision conscionable, the Court would be forced to significantly modify the agreement to remove the various provisions discussed above. Given multiple unconscionable provisions, and the inability to cure the unconscionability by striking a single provision, Defendant's request to sever is denied. *See Armendariz,* 24 Cal.4th at   124-25.

Based on the nature of the procedural and substantive unconscionability, the delegation clause is unenforceable. The Court, not the arbitrator, therefore, determines whether the Arbitration Agreement is enforceable. *See Lim*, 8 F.4th at 1006.

### 5.     Unconscionability of the Arbitration Agreement

The same reasons for finding the delegation provision unenforceable, *i.e.*, the venue, fee shifting, and choice of law provisions, render the Arbitration Agreement unenforceable in its entirety. As discussed above, these unconscionable provisions cannot be severed to enforce the balance of the Arbitration Agreement.

/ / / / /

### C. CONCLUSION

Defendant's motion to compel arbitration is denied.

**IT IS SO ORDERED.**

Dated: September 15, 2025

_____
Hon. M. James Lorenz
United States District Judge